RUDOLPH M. HIRSCHWALD, DAVID D. GOFF and ALEXANDER
N. RUBIN, a partnership of lawyers trading under the
firm name of HIRSCHWALD, GOFF and RUBIN, DAVID
D. GOFF as Voting Trustee, and MARY T. LAVIN,

*vs.*

ERLEBACHER, INC., a corporation of the State of Delaware,
JULES C. WINKELMAN, individually and as Voting Trus-
tee, FRANK N. WINKELMAN, ELEANOR WINKELMAN and
SYLVIA WINKELMAN.

*New Castle, January 15, 1943.*

*Caleb R. Layton, 3d,* of the firm of Hastings, Stockly & Layton, for complainants.

*Alexander L. Nichols,* of the firm of Morris, Steel, Nichols & Arsht, for respondent Erlebacher, Inc.

PEARSON, Vice-Chancellor: The parties complainant and respondent include the owners of all interests, legal and equitable, in all of the common stock of the respondent Erlebacher, Inc. This corporation was organized in August 1939, and was authorized to issue 500 shares of no par value common stock, which it issued as follows: 125 shares in the name of complainant Mary T. Lavin (who was actually the nominee of complainants, Hirschwald, Goff and Rubin) ; and 375 shares, in different amounts, in the names of respondents, Frank, Eleanor, and Sylvia Winkelman, respectively (they being nominees of respondent Jules C. Winkelman). In September 1939, the registered owners entered into an agreement, entitled "Voting Trust Agreement", with complainant Goff and respondent Jules C. Winkelman as voting trustees. The agreement purports to confer upon the voting trustees broad authority to vote stock deposited with them, for a period of five years ending September 6, 1944. The registered holders assigned their shares to the voting trustees. A copy of the agreement was not filed in the principal office of the corporation in Delaware until December 1941 when complainant Goff filed a copy. The stock assigned to the voting trustees has not been transfer-

red to them on the books of the company. In January 1942, Goff tendered to the corporation, for transfer to the voting trustees, all of the assigned stock certificates in his possession. He demanded that his cotrustee, J. C. Winkelman, deliver to the corporation, for the same purpose, an assigned stock certificate in his custody. The corporation declined to issue in the names of the voting trustees any certificates for any of the stock. Winkelman refused to deliver the certificate in his custody, and further refused to sign, as a voting trustee, any of the voting trust certificates which Goff had prepared for delivery to the stockholders who had transferred their shares under the agreement. Some time later, this suit was instituted to require Winkelman to surrender the stock certificates which he holds, and to obtain the issuance of certificates in the names of the voting trustees for all of the shares assigned to them under the agreement.

The demurrant contends that complainants have not stated a case entitling them to the relief prayed for, (1) because the voting trust agreement does not provide expressly that the trustees shall file a copy of it in the principal office of the corporation in Delaware, or surrender to the corporation, for record transfer, stock certificates assigned to the trustees, which acts, demurrant says, are conditions precedent to the creation of a valid voting trust under the governing statute; (2) because the express terms of the agreement, construed in the light of the subsequent conduct of the parties, do not warrant "reading into the agreement by implication these requirements of the statute"; (3) because complainants are barred by laches "amounting to abandonment of the agreement."

The relevant statute is *Section* 18 of the *Delaware Corporation Law, Revised Code of Delaware* (1935), *Section* 2050, which provides in part as follows:

"One or more stockholders may by agreement in writing deposit capital stock of an original issue with or transfer capital stock to any

person or persons, * * * for the purpose of vesting in said person or persons, * * * who may be designated Voting Trustee or Voting Trustees, the right to vote thereon for any period of time determined by such agreement, not exceeding ten years, upon the terms and conditions stated in such agreement. Such agreement may contain any other lawful provisions not inconsistent with said purpose. After the filing of a copy of such agreement in the principal office of the corporation in the State of Delaware, which copy shall be open to the inspection of any stockholder of the corporation or any beneficiary of the trust under said agreement daily during business hours, certificates of stock shall be issued to the Voting Trustees to represent any stock of an original issue so deposited with them, and any certificates of stock so transferred to the Voting Trustees shall be surrendered and cancelled and new certificates therefor shall be issued to the Voting Trustees, and in the certificates so issued it shall appear that they are issued pursuant to such agreement, and in the entry of such Voting Trustees as owners of such stock in the proper books of the issuing corporation that fact shall also be noted. Said Voting Trustees may vote upon the stock so issued or transferred during the period in such agreement specified; stock standing in the names of such Voting Trustees may be voted either in person or by proxy, * * *."

The recital and first two paragraphs of the agreement read thus:

"Whereas, the stockholders deem it for the best interests of themselves and of the corporation to act together concerning the management of the corporation, and, to that end, *to unite the voting powers held by them as stockholders, and to assign, transfer and vest the same in the hands of the Voting Trustees*, all as hereinafter more particularly provided:

"Now, therefore, it is mutually agreed as follows:

"1. That each and every stockholder of the corporation, as now or hereafter constituted, may become a party to this agreement, by depositing with the Voting Trustees, certificate or certificates for his or her said shares of stock, *together with a proper and sufficient instrument, duly executed, for the transfer thereof to the Voting Trustees.*

"2. That the Voting Trustees from time to time, upon request, will cause to be issued, in respect of stock certificates of the corporation, delivered to them as aforesaid, certificates evidencing the interest of the stockholders, transferable by them, on books maintained by the Voting Trustees, at the office of the corporation, which shall contain a provision substantially as follows:

" 'Issued under, and pursuant to, and the rights of holders are subject to and limited by the terms and conditions of a certain agreement dated September 6, 1939, made and entered into between stockholders of Erlebacher, Inc. and the said Voting Trustees, which agreement is on file with the Voting Trustees, and a *duplicate of which agreement is on file in the office of Erlebacher, Inc.*' " (Italics supplied.)

Admittedly, the agreement contains no express undertaking by the trustees to do what the statute prescribes to be done with respect to the filing of a copy, and surrender of stock certificates. However, the statute does not require the inclusion of terms to that effect, and no reason appears why they must be included. Generally, a trustee, upon acceptance of a trust, owes numerous duties to the beneficiary which arise out of the nature of the relationship, although not specified in the trust instrument, including the duties to administer the trust; to take reasonable steps to take and keep control of the trust property; and so far as it is reasonable that he should do so, to see that the property is designated as property of the trust. 1 *Restatement of the Law of Trusts,* § 164 *Comment h,* §§ 169, 175, 179. It is manifest that those who enter into an agreement with shareholders of a Delaware corporation for the purpose of creating a "voting trust" within the meaning of the statute, and who accept the assignment of shares of stock to be held under the terms of the agreement, thereby accept the trust. Likewise, there can be no serious doubt that the statutory provisions under discussion are directions which give rise to duties, on the part of "voting trustees" who have so accepted the trust, to file a copy of the agreement and surrender the stock certificates for transfer. In the situations for which they were designed, the directions become operative by force of the statute alone, and not by virtue of any repetition in the agreement. It seems hardly necessary to comment that here we are not concerned with such questions as whether the voting trustees, before filing a copy of the agreement, could require the corporation to issue stock certificates to them; or whether the trustees would have the

power to vote stock assigned to them, but not surrendered to the corporation for transfer.

The terms of the present agreement show quite clearly that the parties undertook to create a "voting trust" within the meaning of the statute. Moreover, the terms permit of and are consistent with performance of the directions of the statute. Accordingly, it would follow that the cotrustee Winkelman is under a duty to surrender for transfer the stock certificate which he holds, and that the corporation must issue new certificates in return for those tendered for transfer, unless, as the demurrant contends, the conduct of the parties requires some alteration in the construction of the agreement, or constitutes laches or abandonment so as to bar relief.

In this connection, other facts alleged in the bill must be mentioned. Each stock certificate assigned to the voting trustees was stamped on its face with the language directed by paragraph 2 of the agreement, quoted above, to be contained in voting trust certificates issuable to depositing stockholders. The stock certificates were left in the possession of Goff until some time in 1940 when he delivered one of them to his cotrustee, Winkelman. Until 1941, all of the parties to the agreement recognized it as valid and effective. Goff and Winkelman conferred and mutually agreed upon the selection of the original directors and officers, and in 1940 agreed in advance upon the renewal of the terms of office of the directors. It is alleged that "All of these things were accomplished however, informally without using the mechanics provided by said Voting Trust Agreement because of the mutual reliance of the said David D. Goff and Jules C. Winkelman upon each other."

In 1941, certain difficulties arose between the complainants and Jules C. Winkelman. At the annual stockholders' meeting, Goff demanded that directors be elected pursuant to the terms of the voting trust agreement. Winkelman "refused to recognize its existence." Thereafter, complain-

ants made various efforts to enforce the voting trust, terminating in this suit.

In my view, the acts of the parties furnish no reasonable basis for reading into any term of the agreement an intent that the trustees should not do what the statute directs. Nor does the conduct amount to laches, or abandonment of the agreement. Although for a considerable part of the term of the trust neither of the voting trustees attempted to obtain a record transfer of the stock assigned to them, none of the interested parties objected, and none was injured or prejudiced, so far as the facts disclose. In a sense, the ultimate purpose of the trust was, during this time, carried out, for the two voting trustees actually chose the directors until J. C. Winkelman declined to recognize the existence of the agreement. Since then, he and the corporation have been at fault in preventing the operation of the voting trust. His duty to surrender the stock certificate for transfer, and the company's duty to issue new certificates, are plainly enforceable by the cotrustee (1 *Restatement of the Law of Trusts,* § 200 *Comment d*) as well as by a depositing stockholder, who, as a party to the agreement, is a beneficiary of the trust.

An order overruling the demurrer will be advised.